UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:25-cv-00050-TWP-KMB |
| ) | |
| $97,942.00 UNITED STATES CURRENCY, ) | |
| 21 FIREARMS, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| SHAWN GIBSON, ) | |
| YENDY GONZALEZ, ) | |
| ) | |
| Claimants. ) | |

**ORDER ON CLAIMANTS' MOTIONS TO ACCEPT LATE CLAIM,
PLAINTIFF'S MOTION TO STRIKE CLAIM, AND
PLAINTIFF'S MOTION FOR CLERK'S ENTRY OF DEFAULT**

This matter is before the Court on Plaintiff United States of America's ("United States") Motion for Clerk's Entry of Default (Dkt. 12), and Motion to Strike Claim for Failure to Comply with Supplemental Rule G(5). (Dkt. 18).  Also pending are Claimants Shawn Gibson ("Gibson") and Yendy Gonzalez ("Gonzalez") (collectively "Claimants") Motions to Accept Late Claim (Dkt. 13; Dkt. 15).  The United States initiated this action seeking forfeiture in rem of property allegedly owned by Gibson and Gonzalez which was seized after the search of Gibson's home uncovered weapons and cash alleged to be connected to criminal activity. (Dkt. 1). After Claimants failed to timely respond or otherwise defend this action, the United States moved for a Clerk's Entry of Default. Claimants belatedly filed claims which the United States requests be stricken. For the following reasons, Claimants' motions to accept their late claims are **granted**, and having

considered the claims, the United States's motion to strike the claims and grant clerk's default are **granted.**

## I. BACKGROUND

In July 2024, the Clarksville Police Department ("CPD") in Clarksville, Indiana received information from the United States Drug Enforcement Administration ("DEA") that Gibson was involved in an ongoing drug-trafficking investigation. (Dkt. 1 at ¶ 7). Utilizing surveillance, the DEA was informed that a black Ford Econoline Van with Indiana license plate #371CPW was associated with Gibson. *Id.* ¶ 7. On July 16, 2024, the Clark County Sheriff's Department ("CCSO") assisted CPD in locating the van at 429 Lakeridge Road, Henryville, Indiana. *Id.* ¶ 8. Later that evening, the van was observed leaving 429 Lakeridge Road, Henryville, Indiana. *Id.* ¶ 9. CSSO Deputy Sean O'Sullivan stopped the van on Interstate 64 for a traffic infraction, noting that Gibson was the driver and sole occupant. *Id.* ¶ 9.

Once assisting officers arrived, officers completed a search of the van, locating a blue duffle bag behind the driver's seat that included three vacuum-sealed bags of marijuana, weighing approximately one pound each. *Id.* ¶ ¶ 11-12. Gibson was arrested and booked into the Clark County Jail on charges of Possession of a Controlled Substance, Dealing in Marijuana, Possession of Marijuana, Dealing in a Schedule I Controlled Substance, Maintaining a Common Nuisance, Possession of Paraphernalia, and Dealing in Marijuana with a prior conviction. These charges remain pending in Clark County Circuit Court and are set for trial on November 4, 2025. *Id.* ¶ 13.

As part of the ongoing investigation into drug trafficking, CCSO Detective Nicholas Cappola applied for a search warrant for Gibson's residence at 429 Lakeridge Drive, Henryville, Indiana. *Id.* ¶ 14. The search warrant was executed on July 17, 2024, and Gibson's girlfriend, Gonzalez and three young children were present at the time. *Id.* ¶ 15.

Law enforcement searched the lower level of the residence and found a safe that contained $93,011.00 cash rubber banded and stacked, along with marijuana and jewelry. *Id.* ¶ 18. Officers also located firearms, ammunition, magazines, and ammunition boxes in various totes and packaged on the lower level of the residence. *Id.* ¶ 22. Indicia of drug trafficking included near the safe: a money counter, a vacuum sealer, packaging, approximately 15.4 pounds of THC wax, approximately 14.6 pounds of THC vape pens, approximately 74.4 pounds of THC gummies, and 26.8 pounds of "Alien Brainz" THC products. ¶ 21. On the upper level of the residence inside the master bedroom, officers located $4,619.00 cash, rubber-banded and stacked within a drawer. *Id.* ¶ 23. Also, the bedroom contained several firearms: One handgun with a loaded drum magazine; two on the top of the dresser; and others underneath the mattress. *Id.* ¶ 23.

Suspecting that the money was proceeds of a violation of federal controlled substance law, 21 U.S.C. § 841, the FBI seized $97,942.00 in U.S. currency pursuant to 21 U.S.C. § 881. *Id.* ¶ 31. Suspecting the firearms were used to facilitate the transportation, sale receipt, possession, or concealment of controlled substances, local law enforcement seized the firearms. *Id.* The controlled substances, firearms, currency, and paraphernalia seized was transported to the Clark County Sheriff's Office in Jeffersonville, Indiana. *Id.* ¶ 26.

After further investigation revealed Gibson's last reported income was $1,265.47 in 2021, *id.* ¶ 32, the FBI initiated administrative forfeiture proceedings for the Defendant Property pursuant to 21 U.S.C. § 881, *id.* ¶ 36. All known interested parties were provided written notice of intent to forfeit as required by 18 U.S.C § 983(a)(1)(A). *Id.* The FBI received claims from Gibson and Gonzalez on September 25, 2024, with Gibson claiming $48,704.00 and Gonzalez claiming $49,238.00 of the $97,942.00 seized. *Id.* ¶ 37. The FBI then forwarded the claims to the U.S. Attorney. *Id.* ¶ 38.

The United States initiated this action on March 21, 2025 by filing a verified Complaint asserting a claim for forfeiture in rem under 21 U.S.C. § 881, 18 U.S.C. § 981(a), and 21 U.S.C. § 801 *et seq.* (*See* Dkt. 1). As required by Rule G(4)(b)(iii)(B) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G"), on March 21, 2025, written notice was sent to potential claimant Gibson by first class mail and certified mail, at 429 Lakeridge Road, Henryville, IN. (Dkt. 12-1). The certified mail receipt card shows the Complaint was delivered on March 24, 2025. *Id*. The envelope sent by first class mail was not returned to the sender. *Id*. On May 16, 2025, a second written notice was sent to potential claimant Gibson by first class mail and certified mail, at 429 Lakeridge Road, Henryville, IN. *Id*. The certified mail receipt card shows the mail was delivered on May 19, 2025. *Id*. The envelope sent by first class mail was not returned to the sender. *Id*.

Written notice was also sent to potential claimant Gonzalez, on March 24, 2025, by first class mail and by certified mail, at 429 Lakeridge Road, Henryville, IN 47126. *Id*. The certified mail was delivered on March 24, 2025 and the envelope sent by first class mail was not returned to the sender. *Id*. On May 16, 2025, a second written notice was sent to Gonzalez by first class mail and certified mail, at 429 Lakeridge Road, Henryville, IN 47126. *Id*. The certified mail receipt card shows this mail was delivered on May 19, 2025. *Id*.

In addition, from March 22, 2025, to May 21, 2025, The United States posted notice of this action against the $97,942.00 in U.S. currency on an official government website for a period of sixty (60) consecutive days, as required by Rule G(4)(a)(iv)(C) (Dkt. 12-1 at 3). On May 16, 2025, to July 15, 2025, The United States issued a second notice for the firearms. *Id*. at 1–2 ¶ 4.

The Claimants failed to file with the Court a verified Claim or Answer within the time prescribed by statute. *See* 18 U.S.C. § 983. On July 16, 2025, the United States filed an Application

4

for Clerk's Entry of Default pursuant to Federal Rule of Civil Procedure Rule 55(a) in this court. (Dkt. 12). That same day, Gibson and Gonzalez each filed a "Motion to Accept Late Claim." (Dkt. 13; Dkt. 15), and notices of their claims of interest (Dkt. 14; Dkt. 16). In Gonzalez's claim, she asserts an "ownership interest $49,238.00 of the seized currency," and "ownership/possessory interest in the 21 assorted firearms, ammunition, magazine and firearm accessories." (Dkt. 14) With respect to Gibson, he asserts an "ownership interest in $48,704.00 of the seized currency," and disclaims any "ownership or interest in any of the firearms, ammunition, or accessories." (Filing 16). Their Motions to accept late claims state that each claimant is proceeding *pro se*, they did not understand that a formal claim needed to be filed in federal court in addition to submitting a petition to the FBI, they acted in good faith and without delay, and the government will not be prejudiced by the acceptance of their claims. (Dkt. 13, 15).

On August 12, 2025, the United States filed a motion, pursuant to Supplemental Rule G(8)(c)(i)(A) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules"), to strike the claims filed by Gibson and Gonzalez for failing to comply with the pleading requirements in Rule G(5). (Dkt. 18).

## II.    LEGAL STANDARDS

### A.    Clerk's Default

Obtaining a default judgment entails two steps. First, the party seeking a default judgment must file a motion for entry of default with the clerk of court by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint. Fed. R. Civ. P. 55(a). Second, the moving party must seek entry of a default judgment against the defaulting party. Fed. R. Civ. P. 55(b). The court may enter a default judgment against a party who has failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(b)(2). The decision to grant or deny a default judgment

5

is within the court's discretion. *See Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (indicating a decision on default judgment is reviewed for abuse of discretion). Under Federal Rule of Civil Procedure Rule 55(c), to have an entry of default set aside, the Claimant must show: (1) good cause for the default; (2) quick action to correct it; and (3) meritorious defense to the complaint. *See Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 810 (7th Cir. 2007).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored; however, "where . . . motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). A court may thus strike defenses that are "insufficient on the face of the pleadings", "that fail as a matter of law," or that are "legally insufficient." *Id*. at 1294.

### III. DISCUSSION

The Claimants concede that they failed to file claims by the deadline, and on July 16, 2025, the United States filed a Motion for a Clerk's Entry of Default. (Filing 12). That same day, the Claimants filed their motions asking the Court to accept their late filed claims, and a notice of their claims of interest. Thereafter, the United States moved to strike the claims. The Court will first address the Claimants' motions to accept their late filed claims, before turning to the United States's Motions.

### A. The late filed claims

This Court's local rules provide that the court may extend response and reply deadlines, but only for good cause. *See* Local Rule 7-1 (c)(4). The United States points out that pleadings in civil forfeiture actions must be filed in accordance with the Supplemental Rules. *See* 18 U.S.C. §

983(a)(4) ("any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the [Supplemental Rules]"). (Dkt. 8 at 5). Supplemental Rule G governs a forfeiture action in rem. Supplemental Rule G(5)(b) states in part that, "[a] claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim."

Gibson and Gonzalez acknowledge that their claims were filed after expiration of their deadlines and the record shows that they have not filed answers to the Complaint. In their claims, both explain that they believed submitting a petition for remission to the FBI was sufficient to assert their rights in the matter. (Dkt. 15 at 1, Dkt. 16 at 1). Because the Claimants are proceeding *pro se,* their pleadings are held to a less stringent standard than are pleadings drafted by attorneys. *See Obriecht v. Raemisch*, 517 F.3d 489, 491 n.2 (7th Cir. 2008). Accordingly, the Court will accept the Claimants' belated claims and turn to the United States's Motion to strike them.

### B. United States's Motion to Strike the Claims

Under Supplemental Rule G(8)(c), the Government may move to strike a claim or answer for failing to comply with Supplemental Rule G(5). The Government argues the Court should strike the claims for two reasons: (1) Claimants failed to Answer the Complaint as required by Rule G(5); and (2) the claims that were filed do not comply with the strict requirements of Rule G(5)(a).

If a claim fails to comply with the requirements of Rule G(5), the government may move to strike it pursuant to Rule G(8)(c)(i)(A) for lack of statutory standing. See *United States v. $12,126.00 in U.S. Currency,* 337 Fed. Appx. 818, 820 (11th Cir. 2009). Here, both Claimants lack standing, because although they have filed belated claims, neither Claimant has filed an answer to

7

the complaint. The United States argues persuasively that a verified claim and an answer to the complaint are not the same – "[a] claim forces the party contesting forfeiture to swear that he has an interest in the property, while an answer requires the claimant to state defenses and to admit or deny the plaintiff's averments." (Dkt. 18 at 6). Because Claimants have failed to answer the Complaint, their claims are subject to be stricken.

The claims are also stricken because they are extremely broad. Supplemental Rule G(5)(a) requires that the claim "identify the claimant and state the claimant's interest in the property." Rule G(5)(a)(i)(B). The Eleventh Circuit has held that compliance with the latter requirement – that the claim state the claimant's interest in the property – "is obligatory in order for a party to have standing to challenge an in rem claim." *United States v. $114,031.00 in U.S. Currency*, 284 Fed. Appx. 754, 756 (11th Cir. 2008), .

The United States provides several cases which support its position. In *United States v. $4,500 in U.S. Currency*, 2021 WL 5043385 (C.D. Ill. October 13, 2021), r.& r. adopted, 2021 WL 5040298 (C.D. Ill. October 29, 2021), a sister court granted the government's motion to strike the claim and for entry of default where the claimant timely filed claims but failed to file a responsive pleading within 21 days after filing as 18 U.S.C. § 983(a)(4)(B) and Supplemental Rule G(5)(b) require, which deprived the claimant of standing to file claims to defendant property.

In *United States v. $39,557.00 More or Less, in U.S. Currency,* WL 475279 at *4 (D.N.J. Feb. 9, 2010), law enforcement officers seized a quantity of currency from a vehicle in which the claimant was riding as a passenger. When the government filed a civil forfeiture action against the property, the claimant filed what the court characterized as "a bald assertion of ownership." Such a claim, the court held, fails to satisfy the pleading requirements of Rule G(5)(a) because it "fails

8

to sufficiently identify [the claimant's] interest in the currency." *Id*. Accordingly, the court granted the government's motion to strike the claim. *Id*.

In *United States v. $134,750 in U.S. Currency*, 2010 WL 1741359 (D. Md. Apr. 28, 2010), a sister court held that it was not sufficient for the Claimant simply to state that "the assets were taken out of my bank accounts by IRS." *Id*. at *3. To the contrary, to comply with Rule G(5)(a), "the Claimant needs to state where and how he acquired the seized assets in which he asserts property interests . . . including, but not limited to, the persons(s) from whom he received the currency, the date of receipt, the place of the receipt, and a description of the transaction which generated the currency." *Id*. at *2.

In her claim of interest, Gonzalez states only that she "asserts an ownership interest in $49,238.00 of seized currency and in the 21 assorted firearms, ammunition, magazines, and firearm accessories" seized in this matter. (Dkt. 14). For his part, Gibson states only that he asserts an ownership interest in $48,704.00 of the seized currency. (Dkt. 16). Neither Claimant states where and how they acquired the seized assets in which they assert property interests, neither state from whom they received the currency, the date of receipt, the place of the receipt, or a description of the transaction which generated the currency.

Both Claimants received notice in March 2025 of the seizure. Thereafter, both Claimants filed belated claims and notices which are sparse and fail to sufficiently identity the Claimants' interest in the property as required by Rule G(5)(a). In addition, despite having notice that an answer was required, neither Claimant bothered to answer the complaint, and neither has responded to the United States's Motion to Strike their claims. Accordingly, the United States's Motion to Strike Claims, (Dkt. 18) is **granted**.

### C. Entry of Clerk's Default

Having determined that the claims are stricken, the Court will address the United States's Motion for Clerk's Default. Because the *pro se* Claimants filed their motions to accept late claims contemporaneously with the United States's motion for a clerk's entry of default, the Court will consider their verified statements in their motions and notices, when determining whether to grant a clerk's entry of default.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Although Rule 55(a), Fed. R. Civ. P. refers to entry of default by the clerk, it is well-established that a default also may be entered by the court." *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982). "[B]ecause the Court, not its Clerk, is addressing the present motion, the question of entry of default merges with the questions a court usually addresses later: whether good cause exists to set aside an entry of default under Rule 55(c)." *Broadwater v. Kalina*, No. 13-cv-309, 2013 WL 3353946, at *1 (S.D. Ind. July 3, 2013). The Court will also consider whether Claimants took quick action to correct the default and whether they have a meritorious defense.

Good cause "is found with an honest mistake, not as the result of willful misconduct, carelessness, or negligence." *See Am. Com. Barge Line LLC v. IWC Oil & Refinery, LLC*, No. 4:22-CV-00136-TWP-KMB, 2025 WL 814932, at *3 (S.D. Ind. Mar. 14, 2025). Indiana law allows good cause to be proven by showing that a party held a genuine mistake of the law or inadvertence. *See id.* Here, Claimants assert that they believed submitting a petition for remission to the FBI was sufficient to assert their rights in the matter. (Dkt. 15 at 1). Specifically, they did

10

not understand that in addition to the petition, a separate formal claim must be filed in federal court. (Dkt. 15 at 2). *Pro se* Claimants 'mistake of the law is sufficient to satisfy good cause.

Next, the court must find that the Claimants acted quickly to correct their default. Quick action revolves around the unique circumstances of the defaulted defendant. *See Am. Com. Barge Line* LLC, 2025 WL at 6. (holding that the time frame in which the defendant becomes aware of the entry of default and their subsequent response determines whether the action was "quick"). Additionally, "the Seventh Circuit provides helpful guidance as to what constitutes a reasonable time. Delays of four months, of fifty-five days, and of less than five weeks have all been found to be inexcusable." *See id.* at 7 (quoting *Bekes v. Wash. Cnty. Bd. of Cnty. Comm'rs*, No. 04-cv-201, 2005 WL 8165688, at *3 (S.D. Ind. Sept. 30, 2005)).

The United States filed a Motion for Clerk's Entry of Default on July 16, 2025. (Dkt. 12). Claimants filed individual Motions to Accept Late Claim and Notice of Claim of Interest that same day (Dkts. 13-16). Because the Claimants' claims of property were submitted on the same day as the entry of default, the Court finds that the Claimants exhibited quick action.

Lastly, the Court must determine whether the Claimants have a meritorious defense to the Complaint. A meritorious defense "is not necessarily one that must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment, and which is supported by a developed legal and factual basis." *See Am. Com. Barge Line LLC*, 2025 WL 814932 at *7.

Claimants submitted their Notice of Claim of Interest individually, with Gonzalez claiming interest in $49,238.00 and all 21 firearms while Gibson claimed interest in $48,704.00. (Dkt. 14; Dkt. 16). However, none of their documents include an explanation regarding the ownership of the currency and firearms, nor legal citations that support the alleged ownership. As *pro se*

11

litigants, Claimants are not expected to have an intricate analysis that mirrors legal professionals, yet there is a requirement of a general argument grounded in legal and factual content. Here, Claimants failure to assert a general argument that supports their right of ownership to the currency and firearms does not establish a meritorious defense. The Court finds that the element of meritorious defense is unsatisfied, accordingly a clerk's default should be entered.

### III.     CONCLUSION

For the reasons explained in this Order, Claimant Yendy Gonzalez's Motion to Accept Late Claim, Dkt. [13] and Claimant Shawn Gibson's Motion to Accept Late Claim, Dkt. [15] are **GRANTED**. Plaintiff United States of America's Motion to Strike Claims for Failure to Comply with Supplemental Rule G(5), Dkt. [18] is **GRANTED**, and the United States's Motion for Clerks Entry of Default Dkt. [12] is **GRANTED**.

The **Clerk is directed** to enters a **Clerk's DEFAULT** against the Claimants for failure to plead or otherwise defend this action, in a separate Order.

**SO ORDERED**.

Date:   9/8/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Kelly Rota
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelly.rota@usdoj.gov

Shawn Gibson
2414 Rowan Street
Louisville, KY 40212

Yendy Gonzalez
429 Lakeridge Dr.
Henryville, IN 47126