UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:25-cv-00050-TWP-KMB |
| ) | |
| $97,942.00 UNITED STATES CURRENCY, ) | |
| 21 FIREARMS, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| ) | |
| SHAWN GIBSON Clerk's Entry of Default ) | |
| entered on 9/8/2025, ) | |
| YENDY GONZALEZ Clerk's Entry of Default ) | |
| entered on 9/8/2025, ) | |
| ) | |
| Claimants. ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DENYING CLAIMANTS' MOTION TO SET ASIDE**

This matter is before the Court on a Motion for Default Judgment filed by Plaintiff, the United States of America (the "United States") (Dkt. 21), and a Motion to Set Aside Default Judgment filed by Claimants Shawn Gibson ("Gibson") and Yendy Gonzalez ("Gonzalez") (together, "Claimants") (Dkt. 22). After the Clerk's September 8, 2025 Entry of Default, the United States filed the instant Motion for Default Judgment, and the Claimants prematurely filed a Motion to set it aside, requesting relief pursuant to Federal Rule of Civil Procedure 60(b). For reasons stated below, the United States's Motion is **granted**, and the Claimants' Motion is **denied**.

I.     **BACKGROUND**

The procedural background of this case is set forth in detail in the Order Granting Claimants' Motion to Accept late Claim, Denying Plaintiff's Motion to Strike Claim, and Granting

Clerk's Entry of Default (Dkt. 19). Therefore, only the facts relevant to the instant motions are set forth in this Order.

On July 15, 2025, law enforcement seized $97,942.00 in United States currency and 21 firearms from the Henryville, Indiana, residence of Gibson and Gonzalez (Dkt. 1). Gonzalez was in the residence when the property was seized; and Gibson was arrested on drug related charges earlier that day. *Id.* 2. After further investigation revealed that Gibson's last reported income was $1,265.47 in 2021, *id.* ¶ 32, the Federal Bureau of Investigations ("FBI") initiated administrative forfeiture proceedings for the currency pursuant to 21 U.S.C. § 881. The FBI sent a Notice of the Seizure and Initiation of Administrative Forfeiture Proceedings, separately, to both Gibson and Gonzalez at their residence on August 26, 2024 (Dkt 27-1). The notices informed Gibson and Gonzalez that $97,942.00 in U.S. currency from 429 Lake Ridge Dr., Henryville, IN—of which $93,011.00 was seized from a safe, $4,619.00 was seized from the bedroom, and $312.00 was seized from the kitchen—was being seized as property subject to forfeiture. *Id.* The Notices were properly served and received by Gonzalez, who signed for them on August 30, 2024 (Dkts. 27-2, 27-3).

On September 25, 2024, the FBI received notice of claims from Gibson and Gonzalez, with Gibson claiming $48,704.00 and Gonzalez claiming $49,238.00 of the $97,942.00 seized (Dkt. 1 at 8, ¶ 37). The FBI then forwarded the claims to the United States Attorney's Office. *Id.* ¶ 38.

On March 21, 2025, the United States initiated this action by filing a Verified Complaint for Forfeiture in Rem against Defendant $97,942.00 United States Currency and 21 Firearms, alleging the property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as moneys furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemicals in violation of this subchapter (Dkt. 1). The Complaint alleges that on July 17, 2024, during the

2

execution of a search warrant authorized by a Clark Circuit Court Judge, officers located $93,011.00 in cash that was stacked and rubber banded, along with marijuana and jewelry inside a safe. *Id.* at 5 ¶ 18. "Officers also located two bags of psilocybin mushrooms (approximate weight 1.58 pounds) and a plastic bag of marijuana (approximate weight 1.21 pounds) inside the safe." *Id.* Also located in the lower level near the safe was other indicia of drug trafficking, including: a money counter, a vacuum sealer, packaging, approximately 15.4 pounds of THC wax, approximately 14.6 pounds of THC vape pens, approximately 74.4 pounds of THC gummies, and 26.8 pounds of "Alien Brainz" THC products. *Id.* at 6. In a drawer in the master bedroom, law enforcement located a rubber-banded stack of $4,619.00 in cash, and several firearms, THC products, and marijuana also were in this bedroom. *Id.* Law enforcement also located a digital scale, firearms, ammunition, magazines, and ammunition boxes in various totes and packages on the lower level of the residence, in the kitchen, and in bedrooms. *Id.*

A Notice of Complaint of Forfeiture in Rem was sent to the Claimants via regular and certified mail at the Henryville, Indiana, address that they provided on their claim forms. The notices were received and signed for by Gonzalez on March 24, 2025 (Dkts. 27-9, 27-10). Gonzalez does not dispute in any of her filings that she signed the return receipts. The Complaint notified Claimants that they had 35 days in which to contest the forfeiture by filing a Verified Claim pursuant to Rule G(5)(a). The deadline for filing the claim was April 25, 2025 (Dkts. 4, 5). No claim was filed by the deadline, and on July 16, 2025, the United States filed a motion for Clerk's entry of default (Dkt. 12), which the Court granted on September 8, 2025, and the Clerk entered its default that same date (Dkts. 19, 20).

The United States promptly filed a Motion for Default Judgment on September 17, 2025 (Dkt. 21). On September 22, 2025—before the Court had an opportunity to rule on the Motion for

Default Judgment—the Claimants filed a Motion to Set Aside Default Judgment (Dkt. 22). In their Motion, Claimants allege as grounds for relief: (a) lack of proper notice/excusable neglect; (b) meritorious defense; and (c) interests of justice. *Id.* The United States filed a Response in Opposition (Dkt. 27) and Claimants filed Supplemental Declarations in reply (Dkts. 28, 29).

## II.   LEGAL STANDARDS

### A.   Default Judgment

Obtaining a default judgment entails two steps. First, the party seeking a default judgment must file a motion for entry of default with the clerk of court by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint. Fed. R. Civ. P. 55(a). Second, the moving party must seek entry of a default judgment against the defaulting party. Fed. R. Civ. P. 55(b). The court may enter a default judgment against a party who has failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(b)(2). The decision to grant or deny a default judgment is within the court's discretion. *See Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (indicating a decision on default judgment is reviewed for abuse of discretion).

### B.   Setting Aside a Clerk's Default or Default Judgment

Under Federal Rule of Civil Procedure Rule 55(c), a party seeking to vacate an entry of default prior to the entry of final judgment must show: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint. *See Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 810 (7th Cir. 2007).

After entry of a default judgment, Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." *See* Fed. R. Civ. P. 60(b). While the same test applies for motions seeking relief from default judgment under both

4

Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630–31 (7th Cir. 2009) (internal citations and quotation marks omitted).

A stronger showing is required under Rule 60(b) because of the "strong presumption against the reopening of final decisions." *Id.* "Relief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances." *United States v. One 1979 Rolls-Royce Corniche Convertible*, 770 F.2d 713, 716 (7th Cir. 1985). Rule 60(b) "establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment." *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994)."[T]he language of our case law is mandatory, stating that a party seeking to vacate a default judgment must make the required showings." *Sun*, 473 F.3d at 811. The standard to set aside a default judgment "squarely places the burden on the moving party" to make each of the required showings of good cause, quick action, and a meritorious defense. *Jones*, 39 F.3d at 162.

### III.  DISCUSSION

The United States argues its motion for default judgement should be granted because it has satisfied all the factors required by statute; and the Claimants' premature request to set aside a default judgment should be denied for two reasons (Dkt. 27). First, if the Claimants are attempting to set aside the Clerks Entry of Default, the United States points out that the Court has already considered—and rejected— the Claimants' attempt to avoid the Clerk's Entry of Default. *Id.* at 6. And second, nothing in the Claimants' declarations, untimely answer, and supplemental declarations establishes that the Court made an error in apprehension, that a significant change in the law has occurred, or that there are new facts justifying a reconsideration of the Court's prior

ruling, as required to grant a motion to reconsider. Therefore, the United States argues the Court's ruling granting its Motion for Entry of Clerk's Default should stand.

The Court agrees. In consideration of the Claimants' *pro se* status, this Court found good cause for the Claimants' failure to timely respond to the Complaint in this action (Dkt. 19 at 7). The Court then addressed the United States's request to strike the Claimants' claims. The Court determined that both Claimants lacked standing, because although they have filed belated claims, neither Claimant had filed an Answer to the Complaint, and the proffered claims were extremely broad and failed to comply with the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.[1] The Court also concluded that none of the Claimants' documents in support of their belated claims included an "explanation regarding the ownership of the currency and firearms, nor legal citations that support the alleged ownership." *Id.* at 11. On this basis, the Court granted the United States's motion to strike Claimants' belated claims. *Id.*

The Court then considered whether a Clerk's default should be entered. The Court determined that the *pro se* Claimants' mistaken belief that they did not need to file an Answer to the Complaint was insufficient to satisfy good cause for a Clerk's default, and their failure to assert a general argument that supports their right of ownership to the currency and firearms failed to establish a meritorious defense. After finding that the element of meritorious defense was unsatisfied, the Court concluded that a Clerk's default should be entered. *Id.* at 12.

Nothing in Claimants' recent filings establishes that the Clerk's default should be set aside, so the Court will proceed with addressing the United States's Motion for Default Judgment (Dkt. 21) before considering Claimants' premature motion to set it aside.

---

[1] The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Rule G) governs a forfeiture action in rem arising from a federal statue.

A.      **<u>Plaintiff's Motion for Default Judgment (Dkt. 21)</u>**

The Court may enter a default judgment against a party who has failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(b)(2). The decision to grant or deny a default judgment is within the Court's discretion. *See Domanus*, 742 F.3d at 301 (indicating a decision on default judgment is reviewed for abuse of discretion). A default judgment establishes the defendant's liability to the plaintiff on the cause of action alleged in the complaint. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). "'Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'" *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

The United States has moved pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure for entry of judgment by default. In their Motion, the United States asserts:

> Pursuant to Federal Rule of Civil Procedure 55(b)(2) and Rules C(6) and G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff, the United States of America, respectfully moves this Court for entry of default judgment of forfeiture and a certificate of reasonable cause pursuant to 28 U.S.C. § 2465. This Motion is supported by the previously filed Verified Complaint for Forfeiture In Rem (Dkt. 1) and Affidavit in Support of Application for Clerk's Entry of Default (Dkt. 12-1).

(Dkt. 21). The United States's Affidavit in support of its application for Clerk's entry of default (Dkt. 12-1) supports granting the Motion for Default Judgment. The Court now enters the following Rule 55(b) judgment by default.

> The United States has shown that there was reasonable cause for seizure of the Defendant Property ($97,942.00 United States Currency and 21 firearms). The individuals from whom the Defendant Property was seized, Shawn Gibson and Yendy Gonzalez, were served and failed to file a claim or an answer in this action. A Clerk's Entry of Default was entered on September 8, 2025, against Shawn Gibson and Yendy Gonzalez and all other potential claimants having an interest in the Defendant Property. The Court deems that potential claimants Shawn Gibson and Yendy Gonzalez admit the allegations of the Complaint to be true. Judgment by default is now entered pursuant to Rule 55(b)(2) against all potential claimants, and the Defendant Property is hereby FORFEITED to the United States of America.

The United States is ordered to dispose of said property according to law. IT IS ALSO HEREBY DECREED that there was reasonable cause for the seizure of the Defendant Property as that term is used in Title 28, United States Code, Section 2465 and that any and all persons connected with the seizure of the Defendant Property, or any person connected with the bringing of this action will not be liable to suit or judgment on account of this suit or prosecution.[2]

**B.     Claimants' Motion to Set Aside Default Judgment (Dkt. 22)**

Since a default judgment is now entered, the Court will consider the Claimants' motion to set it aside. In their Motion, the Claimants "move this Court to set aside the Default Judgment entered on September 17, 2025" pursuant to Federal Rule of Civil Procedure 60(b) (Dkt. 22). As grounds for relief, they argue, (a) lack of proper notice/excusable neglect because they did not receive adequate notice of the deadlines to file a claim and or answer, or through mistake, inadvertence, surprise or excusable neglect; (b) meritorious defense as the Defendant property was lawfully obtained and is not subject to forfeiture under applicable law; and (c) interests of justice because forfeiture of a substantial sum without adjudication on the merits would be unduly harsh. *Id.* at 1. Claimants also argue that strong federal policy favors resolution of disputes on the merits rather than by default. *Id.*

Claimants as the moving party have the burden of showing good cause, quick action, and a meritorious defense. *See Jones*, 39 F.3d at 162. They have failed to do so. While it is true that resolving dispute on the merits is favored, the evidence before the Court supports that Claimants were provided proper notice, there is no excusable neglect, they have no meritorious defense, and under the circumstances here, granting forfeiture is legally required and, therefore, not unduly harsh.

---

[2] A separate order of the Order of Default Judgment will be docketed.

While Claimants argue that they did not receive adequate notice of the deadlines to file a claim and/or answer, the return receipts signed by Gonzalez, followed up with notice by publication, shows they were provided proper notice of this action (Dkts. 27-3, 27-4, 27-6, 27-7). The return receipts were signed for by an individual who signed as Yendy Gonzalez (Dkts. 27-9, 27-10). In her filings, Gonzalez does not dispute that she is the person who signed the return receipts.

In a conclusory fashion, Claimants assert "mistake, inadvertence, surprise or excusable neglect" for their failure to file a timely answer (Dkt. 22). To establish good cause for failure to timely file an answer, a defaulted defendant must show "something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment." *Id.*

> It is true that where exceptional circumstances demonstrate that the events contributing to a default judgment were not within the meaningful control of the defaulting party, Rule 60(b) relief may be warranted. However, where a party willfully, albeit through ignorance or carelessness, abdicates its responsibilities, relief from judgment under Rule 60(b) is not warranted.

*Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 229 (7th Cir. 1991) (internal citations omitted).

The Seventh Circuit has expounded on what encompasses "good cause," describing it as a process of weighing the equities to each side. *United States v. Di Mucci*, 879 F.2d 1488 (7th Cir. 1989). Good cause is not equivalent to having a good excuse or showing excusable neglect. *Sims v. EGA Prods., Inc.*, 475 F.3d 865 (7th Cir. 2007). Instead, a court must consider the defaulting party's actions (*i.e.*, did it quickly act to correct the problem, does it have meritorious defenses?) and the prejudice to each side. *Di Mucci*, 879 F.2d at 1495.

Claimants state in their declarations that they were confused regarding the legal process, had no guidance on what needed to be filed, and did not understand how to properly respond (Dkts.

9

23-1). But their affirmations that they were confused and did not understand their obligations is insufficient to show good cause. The Notices of Complaint clearly explained the procedures for filing a verified claim, describe the contents required, and specifically stated "if you file a valid claim, you must file an Answer to the Complaint . . . not later than 21 days after filing your verified claim to the defendant property." (Dkts. 27-4 at 2, 27-5 at 2).

Some deference is given when litigants proceed without counsel, but *pro se* litigants are not automatically entitled to more lenient treatment in determining whether good cause exists for lifting an entry of default. The Seventh Circuit has held that a litigant "bears the consequences of errors by its chosen agent." *Sims*, 475 F.3d at 869. In addition, as argued by the United States, although they are self-represented, "Claimants have been savvy enough to invoke a rule of civil procedure, prepare affidavits, file a new albeit barebones claim, and attempts to file an untimely answer." (Filing 27 at 8). Under these circumstances, Claimants have not shown good cause for their failures to timely file a claim, answer the Complaint, or otherwise comply with their statutory obligations.

Claimants' assertion of excusable neglect also fails because "excusable neglect" is invoked only in "unique or extraordinary" circumstances where the interests of justice justify turning a blind eye to a clear violation of the filing requirements in the applicable statutes and rules. *United States v. $230,963.88 in U.S. Currency*, No. Civ. 00-378-B, 2000 WL 1745130, *4 (D.N.H. Nov. 16, 2000). As the Court in *$230,963.88* held, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect" and "[o]therwise, claimants in civil forfeiture cases could routinely ignore the filing deadlines and then expect forgiveness from the courts, thereby frustrating efforts by the United States and the courts to manage their dockets

and expeditiously dispose of cases, many of which involve meritless claims." *Id.* at *2. Accordingly, Claimants have failed to establish the first prong.

While Claimants may have acted quickly, they have not established the third prong, a meritorious defense. A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment, and which is supported by a developed legal and factual basis. *Merrill Lynch Mortg. Corp., v. Narayan*, 908 F.2d 246, 252 (7th Cir. 1990); *Breuer Elec. Mfg. Co., v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982). "[A] defendant's response to a motion for default judgment [is] insufficient if it lack[s] a grounding in facts which would support a meritorious defense of the action." *Pretzel & Stouffer*, 28 F.3d at 42, 46 (7th Cir. 2011), (citing *Merrill Lynch Mortg. Corp.*, 908 F.2d at 252). Furthermore, "a meritorious defense requires more than a 'general denial' and 'bare legal conclusions.'" *Id.* (quoting *Breuer Electric Manuf. Co.*, 687 F.2d at 186). A meritorious defense must be "supported by a developed legal and factual basis." *Jones*, 39 F.3d at 165.

Claimants' filings in support of their meritorious defense offer no support for their proffered defense that $97,942.00 of cash—most found in stacks stashed in a basement safe filled with narcotics and some found in two other places in their residence, also alongside narcotics—is not subject to forfeiture. Gibson submits an affidavit stating that $48,704.00 of the seized funds lawfully belongs to him, and Gonzalez claims $49,238.00 (Dkt. 23-1). Claimants submit unsigned documents referencing alleged settlements and payments and communication with a law firm and insurance companies dated in 2020 and 2022 (Dkt. 24 at 1–12). In their Supplemental Declarations, Claimants jointly submit undated screenshots of what appear to be portions of bank statements (29-1 at 3–4); and a screenshot of a portion of a money market account statement dated December

2020. *Id.* at 5. Neither of the Claimants' names appear on any of these documents. They also submit a copy of two checks dated June 20, 2022, made out to Claimants, totaling $25,473.00. *Id.* at 6.

Gonzalez affirms under penalty of perjury that she "declares ownership of all 21 firearms. (Dkt. 28-1). She submits a "Disposition Receipt" dated July 3, 2021, for a pistol, and a Criminal History Request form dated December 1, 2022, showing that a "pistol" was released to her allegedly by the Louisville Police Department. *Id.* at 3-4.

None of the documentation submitted by Claimants is sufficient to show a meritorious defense. As the United States points out, Claimants' documents "do not include bank statements that could indicate if any of the money—alleged to be related to drug trafficking in the complaint—was from some settlement that was received in cash or was received electronically and then cashed at a bank." (Dkt. 27 at 9). Nor do Claimants submit any paycheck stubs, bank records or other documents to show their income or assets in 2024, the year that the seizures occurred.

Considering all documentation submitted, the Claimants' random assortment of documents lacks any legal or factual basis to establish any meritorious defense. None of the unverified documents lend credence to Gibson's claim of $48,704.00 nor Gonzalez's claim to $49,238.00 of the $97,942.00. Moreover, the Claimants make no argument about the 21 firearms included in the Defendant Property. As such, Claimants have no meritorious defense as to the $97,942.00 in United States currency or the 21 firearms. Accordingly, Claimants' Motion to Set Aside the Default Judgment is **denied**.

## IV. CONCLUSION

For the reasons explained in this Order, the United States's Motion for Default Judgment, Dkt. [21], is **GRANTED**. The Final Default Judgment will be docketed in a separate filing.

As the party seeking to set aside the Default Judgment, the Claimants had to establish good cause for their default, quick action to correct it, and a meritorious defense to the Complaint. Having failed to do so, the Claimants' Motion to Set Aside Default Judgment, Dkt. [22], is **DENIED**.

    **IT IS SO ORDERED.**

Date: 2/2/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Kelly Rota
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelly.rota@usdoj.gov

Shawn Gibson
2414 Rowan Street
Louisville, KY 40212

Yendy Gonzalez
429 Lakeridge Road
Henryville, IN 47126